UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| BOBBY DODGE, | 3:12-cv-00478-MMD-WGC |
|---|---|
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| STATE OF NEVADA, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 30.)[1] Plaintiff did not file an opposition; however, Defendants filed a reply in support of their motion. (Doc. # 32.) After a thorough review, the court recommends that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff, a pro se litigant, at all times relevant to the events giving rise to this action was a prisoner in the custody of the Nevada Department of Corrections (NDOC) and housed at Ely State Prison (ESP). (Pl.'s Am. Compl., Doc. # 7.) He has since been released from prison. (*See* Doc. # 27.) He brings this action pursuant to 28 U.S.C. § 1983. (Doc. # 7.) Defendants are Isidro Baca, Renee Baker, Debra Brooks, James Cox, Tommy Sunday and Tom Tolbert. (Doc. # 7; Screening Order, Doc. # 13.)[2]

On screening, the court permitted Plaintiff to proceed with an Eighth Amendment claim

---

[1] Refers to court's docket number. Unless otherwise indicated, all page number references are to the court's docketed page numbers.

[2] Plaintiff also asserted his claims against two doe defendants; however, despite having ample time to do so Plaintiff never substituted in the names for these defendants.

for deliberate indifference to his safety against defendants Tolbert and Sunday based on the allegation that they failed to intervene or provide Plaintiff with assistance when he was assaulted by other inmates on August 30, 2011. (Doc. # 13.) The court also allowed Plaintiff to proceed with an Eighth Amendment claim against defendants Baker, Baca, Brooks and Cox based on the allegation that they knew of the risk of harm to Plaintiff presented by his transfer to another housing assignment, but failed to protect Plaintiff despite this knowledge. (*Id*.) The court allowed Plaintiff's state law tort claims based on these same allegations to proceed. (*Id*.) Finally, the court dismissed a claim asserted under the Fourteenth Amendment with prejudice. (*Id*.)

Defendants now move for summary judgment arguing that they were not deliberately indifferent to Plaintiff's safety because the defendant officers on duty responded appropriately to the attack when they became aware of it, and the remaining defendants did not know of any risk of harm to Plaintiff when he was approved to transfer between units. (Doc. # 30.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*

*Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

In their reply brief, Defendants cite Local Rule 7-2(d), which states that when a party fails to oppose a motion, it shall constitute consent to grant the motion. The Ninth Circuit has ruled, however, that the recent amendments to Federal Rule of Civil Procedure 56 "prohibit the grant of summary judgment 'by default even if there is a complete failure to respond to the motion.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). "If there is a failure to respond, the Rule 'authorizes the court to consider a fact as undisputed.'" *Id*. The moving party is still required to meet its burden. Thus, Plaintiff's failure to respond to Defendants' motion does not end the court's inquiry.

///

# III. DISCUSSION

**A. Eighth Amendment Deliberate Indifference to Safety**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotation marks omitted). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corr. Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714 F.3d at 1160.

First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Farmer*, 511 U.S. at 834 (citations and quotations omitted). When a prisoner claims prison officials failed to take reasonable steps to protect him, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).

1    Second, the inmate must satisfy the subjective element. This means that the prison
2  official must "know of and disregard an excessive risk to inmate health or safety; the official
3  must both be aware of the facts from which the inference could be drawn that a substantial risk
4  of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus,
5  liability only attaches if the official knows of the risk of harm and "fail[s] to take reasonable
6  measures to abate it." *Labatad*, 714 F.3d at 1160 (citation omitted). Prison officials may
7  therefore avoid liability by: (1) proving they were unaware of the risk, or (2) proving they
8  "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511
9  U.S. at 844-45.

**B. Defendants Baca, Baker, Brooks and Cox**

According to Defendants, while incarcerated at ESP Plaintiff appeared for a full classification committee review for a move from General Population Level 2 to General Population Level 1 on August 24, 2011. (Doc. # 30 at 2; Dolezal[3] Decl., Doc. # 30-1 ¶ 7; Brooks Decl., Doc. # 30-2 ¶ 7.) Level 1 General Population is the least restrictive general population unit at ESP (*Id*.) The move contemplated for Plaintiff would allow Plaintiff to have greater privileges, but he would remain among general population inmates. (*Id*.) During the review, Plaintiff expressed no problems in moving to Unit 8 in General Population Level 1. (Doc. # 30 at 3; Baker Decl., Doc. # 30-4.) He did not identify any threats, individuals he considered to be enemies or other concerns regarding inmates housed in Unit 8. (*Id*.; Dolezal Decl., Doc. # 30-1; Brooks Decl., Doc. # 30-2.) As a result, the committee recommended Plaintiff's transfer to Level 1 General Population in Unit 8. (*Id*., Dolezal Decl, Doc. # 30-1 ¶ 7.)

In addition, before Plaintiff was moved, the Correctional Escort and Response Team (CERT) reviewed Plaintiff's records to determine whether any Security Threat Group (STG) or enemy issues were known to staff. (*Id*.; Baker Decl., Doc. # 30-4 ¶ 12.) No issues were noted, and Plaintiff was moved to Unit 8A, cell 16. (*Id*.; Dolezal Decl., Doc. # 30-1 ¶ 8; Brooks Decl., Doc. # 30-2 ¶ 8.)

---

[3] Dolezal was a correctional officer assigned to ESP on the date of the incident in question, and was part of Plaintiff's classification hearing on August 24, 2011. (Doc. # 30-1 ¶¶ 3, 7.)

- 6 -

Defendant Baker was not part of the classification committee that reviewed Plaintiff for placement in General Population Level 1 at ESP. (Baker Decl., Doc. # 30-4 ¶ 7.) Nor was she aware that Plaintiff had any issues that precluded him from being housed there. (*Id.*)

During the relevant time period, defendant Baca was the Assistant Warden of Operations at High Desert State Prison, so he would not have been involved in classification operations at ESP. (Baca Decl., Doc. # 30-8.)

Defendants have provided evidence that they were not aware of any risk of harm involved in Plaintiff's move from General Population Level 2 at ESP to General Population Level 1, Unit 8. During his classification review, he did not identify any threat to himself or indicate he had any known enemies in this unit. Nor did an inspection of his records by CERT reveal any threat to his safety. In addition, defendants Baca and Baker had no involvement in Plaintiff's classification to the new housing unit. Plaintiff has provided no evidence to rebut that provided by Defendants. As such, these facts can be taken as undisputed, and summary judgment should be granted in favor of defendants Baca, Baker, Brooks, and Cox. *See Labatad*, 714 F.3d at 1161 (concluding summary judgment in favor of defendants was proper when plaintiff had been attacked by another inmate but there was no evidence that the other inmate had been identified as a "separatee" of the plaintiff or any other indication of threats or problems with that inmate).

**C. Defendants Sunday and Tolbert**

Defendants contend that on August 30, 2011, defendant Correctional Officer Trainee Sunday was assigned to the Unit 8 control room with Correctional Officer Dustin Melville and defendant Correctional Officer Tolbert. (Doc. # 30 at 3; Tolbert Decl., Doc. # 30-5 ¶ 4.) At approximately 3:45 p.m., defendant Sunday gave Plaintiff's unit's lower tier the last call for the dinner meal. (Doc. # 30 at 3; Tolbert Decl., Doc. # 30-5 ¶ 5; Doc. # 30-3 at 9-10.) Defendant Sunday and Correctional Officer Melville started opening the lower tier cell doors. (Doc. # 30 at 4; Tolbert Decl., Doc. # 30-5 ¶ 5; Doc. # 30-3 at 9010.) As they finished opening the doors, at approximately 3:47 p.m., defendant Sunday looked up from the control room panel and saw two inmates attacking Plaintiff between the cell doors for cells 15 and 16. (Doc. # 30 at 4; Doc. # 30-

- 7 -

3 at 10.)

Contemporaneously, defendant Sunday moved to the unit control window and yelled, "get away from him." (Doc. # 30 at 4; Doc. # 30-3 at 9-10; Tolbert Decl., Doc. # 30-5 ¶ 6.) One inmate moved away from Plaintiff and the other stopped and looked at defendant Sunday. (Doc. # 30 at 4; Doc. # 30-3 at 10.) Officer Melville heard defendant Sunday yell and saw Plaintiff lying on the ground between the cells and saw the attacking inmates get off of Plaintiff and start to walk away. (Doc. # 30-3 at 9.) Officer Melville grabbed the shotgun and ran to the window and yelled, "you three by cells 15 and 16 get on the ground," and all of the inmates complied. (*Id*.)

Defendants maintain that Correctional Officers Tolbert, Melville and Sunday did not immediately intervene with the hands-on force because they are trained not to do so during an inmate-on-inmate attack until it is safe to do so and backup has arrived. (Doc. # 30 at 4; Baker Decl., Doc. # 30-4 ¶ 6; Tolbert Decl., Doc. # 30-5 ¶ 11.) In addition, the inmates had immediately responded to commands to back away; therefore, no physical intervention was necessary. (*Id*.) Defendant Tolbert relieved Officer Melville at approximately 3:48 p.m., and told the inmates in the tier to get on the floor. (Tolbert Decl., Doc. # 30-5 ¶ 7.) Defendant Sunday was instructed to call the shift sergeant and notify the lieutenant that backup was needed, and to call for medical assistance. (*Id*.)

At approximately 3:52 p.m., Lieutenant Bryant arrived at Unit 8 with additional officers and the emergency medical team. (*Id*.; Doc. # 30-3 at 10.) The attacking inmates were placed in restraints and Plaintiff was seen by medical and transported to the infirmary at approximately 4:08 p.m. (*Id*.)

Defendants have provided evidence that upon learning that Plaintiff was being attacked, they acted promptly and reasonably in response. Plaintiff has not provided any evidence to refute their contentions; therefore, these facts may be taken as undisputed. As a result, summary judgment should be granted in favor of defendants Tolbert and Sunday.

In light of this result, the court need not reach Defendants' arguments regarding qualified immunity or official capacity damages claims.

**D. Doe Defendants**

Despite having ample opportunity to substitute in names of Doe defendants, Plaintiff has failed to do so. Therefore, it is appropriate to enter summary judgment as to the entirety of Plaintiff's federal claims.

**E. State Law Tort Claims**

Defendants do not address Plaintiff's state law tort claims in their motion. Nevertheless, because the court is recommending that summary judgment be granted in favor of Defendants as to all of Plaintiff's federal claims, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law tort claims, and dismiss them without prejudice. *See* 28 U.S.C. §1367(c); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 30) and entering judgment in favor of Defendants.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: May 29, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE